IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DOUGLAS LEE DAWKINS,

    Petitioner,               No. CIV S-03-1643 FCD EFB P

    vs.

JOE McGRATH, Warden,

    Respondent.           FINDINGS & RECOMMENDATIONS

                              /

       Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner does not challenge his underlying conviction. Rather, he claims that his rights to due process and equal protection were violated when he was identified, allegedly improperly, as a member of the Black Guerrilla Family (BGF) prison gang, placed in a Security Housing Unit (SHU), and deprived of the ability to earn good time credits and prison privileges. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

**I. Background**

    **A. Proceedings in this Court**

       On July 31, 2003, petitioner filed this action in the United States District Court for the Northern District of California on the form for filing petitions for a writ of habeas corpus. He

1

alleged five claims: (1) Correctional Lieutenant J. Peterson violated his due process rights when he: (a) participated in the validation of petitioner as a BGF gang member without allowing petitioner "a hearing to challenge the gang allegation;" (b) altered the documentation underlying petitioner's gang validation; and (c) improperly participated in petitioner's administrative appeal of his gang validation; (2) Correctional Caption R. Johnson violated his due process rights when he improperly participated in petitioner's administrative appeal of his gang validation; (3) correctional officers T. Felk and T. Kopec violated his due process rights when Officer Kopec improperly participated in petitioner's administrative appeal of his gang validation and refused to call a witness requested by petitioner at the hearing on the administrative appeal; (4) petitioner's rights to due process and equal protection were violated when he was improperly identified as a BGF gang member, placed in a Security Housing Unit (SHU), and deprived of the ability to earn good time credits and prison privileges; and (5) the California courts violated his right to due process by denying his habeas petitions in an untimely manner.[1] On August 4, 2003, the U.S. District Court for the Northern District of California construed petitioner's petition as a civil rights action pursuant to 42 U.S.C. § 1983 and transferred the case to this court.

On August 13, 2003, petitioner filed a request that his recently transferred civil rights action be "consolidated" with another civil rights action pending in this court, entitled *Dawkins v. Peterson* et al., CIV S-02-2038 LKK KJM P. Alternatively, petitioner requested that he be permitted to pursue only his fourth claim in an application for a writ of habeas corpus. Petitioner explained that claims 1, 2, 3, and 5 contained in his recently transferred petition were "the same" as the claims raised in case No. CIV S-02-2038 LKK KJM P. By order dated September 24, 2003, the magistrate judge previously assigned to this case determined that consolidation was not appropriate but authorized the continuance of this matter solely as a habeas corpus action because petitioner was challenging a loss of good time credits.

---

[1] *See Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978) (judicial notice may be taken of court records), *aff'd,* 645 F.2d 699 (9th Cir. 1981).

2

On December 1, 2003, before respondent had filed an answer to the instant habeas petition, petitioner filed a traverse, in which he addressed all five of the claims contained in his original petition. On December 24, 2003, respondent filed an answer in which he addressed only claim 4 contained in the petition, noting that petitioner had requested to proceed with a habeas action on claim 4 only. On January 12, 2004, pursuant to the court's authorization, petitioner filed a supplemental traverse in which he argues that he was improperly validated as a prison gang member in violation of his rights to due process and equal protection, as alleged in claim 4.

On September 8, 2008, petitioner filed an ex parte request for case status, in which he informed the court that he paroled from prison on December 16, 2006, but was returned for a parole violation in May, 2008.

**B. Petitioner's Claims**

As described above, in his August 13, 2003 request to consolidate, petitioner conceded that claims 1, 2, 3, and 5 contained in the instant petition were identical to the claims contained in case No. CIV S-02-2308 LKK KJM P, and he requested permission to proceed in his habeas action with claim 4 only.[2] The court construes the August 13, 2003 filing as a voluntary dismissal of all claims except the request for habeas relief asserted in claim 4. Accordingly, the court addresses the only remaining claim, claim 4.

Petitioner claims that his rights to due process and equal protection were violated when he was validated as a prison gang member and placed in the SHU and denied the opportunity to earn good time credits. Petitioner claims that on September 20, 2001, he appeared before a classification committee and was advised that he had been confirmed (validated) as a prison gang member and would be transferred to the SHU, thereby losing the right to earn one good time credit for each day served. Pet. at 18. He alleges that this action forced him to forfeit credit

---

[2] A review of the record confirms that claims 1, 2, 3, and 5 contained in the instant petition were ruled on in case No. CIV S-02-2038 LKK KJM P. *See* January 31, 2007 order in case No. CIV S-02-2038 LKK KJM P (addressing defendants' motion for summary judgment).

1  that he would otherwise have earned and changed his parole date from August 23, 2005 to
2  December 26, 2006. *Id.* Petitioner also claims that he was denied the right to participate in
3  prison programs even though he had not been found guilty of a serious disciplinary violation.
4  Petitioner states that he requested permission to present argument and witnesses to prove that he
5  was not a gang member, but his request was denied. *Id.* at 19. He further alleges that on
6  October 18, 2001, he appeared before another classification committee, where he told the
7  committee members that correctional Lieutenant Peterson had altered the documentation
8  underlying his gang validation and had planted evidence in his cell. *Id.* at 20. Petitioner also
9  asked to view the evidence underlying his gang validation. *Id.* The committee rejected
10 petitioner's claims and requests. *Id.* at 20-21.

11 In his supplemental traverse, petitioner claims that the prison failed to comply with
12 appropriate regulations and procedures and that he was improperly validated as a gang member.
13 January 12, 2004 Supplemental Traverse at 3-4. He states that prisoners who have been found to
14 be affiliated with other gangs do not suffer the same treatment that he received unless they have
15 been found guilty of a serious rules violation after being afforded "procedural and substantive
16 due process protections established in *Wolff v. McDonnell*, 418 U.S. 539." *Id.* at 5-6. Petitioner
17 claims that the California Code of Regulations "affords all other prisoners housed in general
18 population the administrative/due process right to be punished 'only' for actually, individual,
19 serious misconduct." *Id.* at 7.

20 Petitioner raised these claims in a petition for writ of habeas corpus filed in the
21 Sacramento County Superior Court. Response to April 22, 2008 Order, filed on April 29, 2008,
22 at page 4 of 8. That court transferred the matter to the Lassen County Superior Court, which
23 denied petitioner's claims with the following reasoning:

> The petitioner, in the custody of the California Department of
> Corrections (CDC) at Pelican Bay State Prison, complains of his
> validation as a prison gang member while housed at High Desert
> State Prison, and seeks a lengthy list of remedies, including
> reversal of the validation of his gang member status and extensive

> revision of CDC rules and regulations relating to housing of such gang members.
>
> Thorough review and consideration of the petition and its exhibits demonstrates no violation of any CDC rule or regulation in the course of the petitioner's validation as a prison gang member; the rules and regulations themselves do not violate constitutional due process standards. The credit forfeiture complained of is not a forfeiture; no previously-earned credit has been taken from petitioner. The 2190-day Special Housing Unit (SHU) term complained of is equally illusory: petitioner's mandatory SHU placement must be reviewed each 180 days (15 CCR 3341.5(c)(A)(2) and it is within petitioner's power to shorten his stay therein.
>
> The court does not have a right to judge the intrinsic value of the evidence adduced before an administrative board, the court's power being confined to determining whether there was substantial evidence to support its findings (*Sultan Turkish Bath, Inc. v. Police Commissioners* (1959) 169 Cal.App.2nd 188; see also *Superintendent v. Hill* (1985) 472 U.S. 445); Exhibits "B" (H?) and "C" provide that support. The courts accord prison administrators wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve order and discipline and to maintain institutional security. *In re Wilson* (1988) 202 Cal.App.3rd 661; *People v. Garcia* (1978) 78 Cal.App.3rd 247.)

*Id.* Petitioner subsequently raised his claims in a petition for writ of habeas corpus filed in the California Supreme Court. *Id.* at page 8 of 8. That petition was summarily denied by order dated June 11, 2003. *Id.*[3]

---

[3] Notwithstanding petitioner's release from prison, this matter is not moot. A case is moot when it no longer presents a case or controversy. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). "[A federal action] should . . . be dismissed as moot when, by virtue of an intervening event, a [federal court] cannot grant any effectual relief whatever in favor of the [party seeking relief]." *Calderon v. Moore*, 518 U.S. 149, 150 (1996). A habeas petition which is otherwise moot may proceed if a petitioner can establish some concrete and continuing injury from the alleged harm – some "collateral consequence" that petitioner still suffers as a result of the government act he is challenging. *Spencer*, 523 U.S. at 7-8. In several published California cases decided under California's Determinate Sentencing Law, courts have reduced the term of a prisoner's mandatory parole sentence by excess time spent in prison. *See In re Ballard*, 115 Cal.App.3d 647 (Cal. App. 1st Dist. 1981); *In re Sosa*, 102 Cal.App.3d 1002 (Cal. App. 2nd Dist. 1980); *In re Kemper*, 112 Cal.App.3d 434 (Cal. App. 1st Dist. 1980). California courts have also ordered awards of retroactive good time credit in situations where an inmate was willing to earn the credit at issue, but was prevented from doing so due to errors or omissions of prison administrators or due to no fault on the part of the inmate. *See, e.g.*, *In re Player*, 146

### C. General Background

California prisons consider prison gangs to be the most disruptive of any prison group to the day-to-day management of a prison system, and have determined that gangs present a serious threat to the safety and security of California prisons. Answer at 7, 9. In response to this concern, an inmate gang investigator (IGI) for each institution works to identify gang members or affiliates. Cal. Code Regs. tit. 15, § 3378(c). Before an inmate is identified as a gang member or associate, the IGI must have three or more independent sources of information "indicative of association with validated gang members or associates." *Id.*, § 3378(c)(4). Such information may include a statement from another inmate, an inmate's own admission, tattoos, written materials, photographs, observation by staff, and information from other agencies. *Id.*, § 3378(c)(8). The regulations provide that the IGI unit can consider statements from informants only if their information is independently corroborated or the informant is

---

Cal.App.4th 813 (Cal. App. 4th Dist. 2007); *In re Randolph*, 215 Cal.App.3d 790 (Cal. App. 1st Dist. 1989); *In re Carter*, 199 Cal.App.3d 271 (Cal. App. 1st Dist. 1988); *In re Reina*, 171 Cal.App.3d 638 (Cal. App. 1st Dist. 1985). The rules of the California Department of Corrections and Rehabilitation (CDCR) allow for credit that is not earned to be applied to a sentence. *See* Cal. Code Regs. tit. 15, § 3043.2(c) (listing examples of circumstances beyond the inmate's control which result in an inmate's failure to work or participate in program activities that cannot be cause for denial or forfeiture of participation credit); *Id.*, § 3043.5(f) (an inmate who is deemed completely unable to work due to on-the-job injury is allowed to receive a full award of work based good time credit). The above-cited cases and regulations all concern inmates who were given the initial opportunity to earn work credits, while petitioner's ability to earn time credits was eliminated when he was validated as a gang member and housed in the SHU. However, "when constitutional rights have been violated, federal courts in habeas corpus proceeding have broad powers to fashion an appropriate remedy and dispose of matter as law and justice require," *Blanchard v. Brewer*, 318 F. Supp. 28, 32 (S.D. Iowa 1969), *aff'd*, 429 F.2d 89, *cert. denied*, 401 U.S. 1002, and "if at the time the habeas petition is considered, justice requires relief for the applicant, a federal court possesses power to grant any form of relief necessary to satisfy the requirement of justice." *Levy v. Dillon*, 415 F.2d 1263, 1265 (10th Cir. 1969); *see also* 28 U.S.C. § 2243. Taking into account the broad powers of a habeas court together with California law that has provided for both the reduction of the mandatory parole term by excess time spent in prison and the award of work credits not earned, this court finds that petitioner may be granted effective relief so long as he remains on parole. If petitioner prevailed on the merits by showing that he was denied the opportunity to earn credits in violation of federal laws or the Constitution, this court could grant relief in the form of retroactively awarding petitioner credits he should have earned. This constitutes a sufficient collateral consequence to defeat a finding of mootness. For these reasons, this matter was not rendered moot by petitioner's release from prison.

6

otherwise known as reliable. *Id.*, § 3321(b)(1).

Once the prison determines that an inmate is a member or associate of a prison gang, the inmate is routinely transferred to administrative segregation and considered for placement in the SHU. Answer at 9. The SHU is the prison's method of dealing with inmates who commit serious disciplinary violations or who become affiliated with a prison gang. *Id.*; Cal. Code Regs. tit. 15, § 3341.5(c). When an IGI believes there is sufficient information to validate an inmate as a gang member, he prepares a "validation package" for submission to the Special Services Unit in Sacramento. Answer at 10. The inmate is then brought to the office of the IGI, told he is suspected of being a gang affiliate, and provided with a copy of a form summarizing the evidence that was relied upon to determine whether the inmate is a gang affiliate. *Id.* When the evidence in the validation package includes information from a confidential informant, the inmate is provided with a "Confidential Information Disclosure Form" which summarizes the substance of the accusation without disclosing the informant's identity. *Id.*

The inmate is given the opportunity to present his views to the IGI and to contest the allegation that he is a gang affiliate, but is not allowed to present evidence, examine witnesses or obtain assistance. *Id.* If the IGI decides to continue with the validation process after meeting with the inmate, he submits the validation package to the Special Services Unit. *Id.* The Special Services Unit will validate the inmate as a gang member or associate if the information in the package appears to be in order. *Id.*

Once an inmate has been validated as a gang member and placed in the SHU, he must be free of any gang activity for at least six years before he may be considered for release. Cal. Code Regs. tit. 15, §§ 3341.5(c)(5), 3378(e). However, if an inmate chooses to "debrief"—admit his gang affiliation, identify other gang members, and reveal all he knows about gang structure–he will be released from the SHU at the end of the debriefing process. *Id.*, § 3378.1(d).

An inmate placed in the SHU receives periodic reviews, at intervals of 180 days, for consideration of release to general population. Cal. Code Regs. tit. 15, § 3341.5(c)(2)(A).

Plaintiff has received several classification hearings at which his gang status has been discussed. Answer, Ex. G. However, the result of these hearings is that each time plaintiff is returned to the SHU unless he debriefs. *Id.*

In 2001, plaintiff was a prisoner at High Desert State Prison. Pet. at 6. On August 17, 2001, defendant Peterson, a correctional lieutenant/institutional gang investigator, searched plaintiff's personal property and found two drawings and one tattoo pattern, each containing a dragon by itself, or with a ball and chain or medieval weaponry, symbols associated with the BGF. Answer, Ex. B. Peterson examined plaintiff's central and confidential files and determined that plaintiff, also known as Rasheed, met the criteria for validation as a member of BGF. *Id.* He based this conclusion on the material found in plaintiff's cell; a confidential memorandum Peterson wrote on the day of the search; a confidential memorandum by M. Townsend, dated July 7, 2000; a debriefing report dated December 20, 2000, in which plaintiff was identified as a BGF member; and a confidential memorandum by August 17, 2001 by D. Shaver. *Id.* These items were sent to the Special Services Unit in Sacramento as a gang validation packet. *Id.* On September 10, 2001, Agent John Harrison of the Special Services Unit reviewed the validation packet and validated plaintiff as a BGF member. *Id.* The memorandum authored by D. Shaver did not meet the validation requirements and was not used as a basis for validation. *Id.*

On September 14, 2001, correctional Sergeant R. Green handed petitioner an administrative segregation placement order, which advised petitioner that he was being placed in segregated housing as a result of the prison gang validation process. Pet. at 6. Petitioner advised Sergeant Green that he had never been validated as a member of a prison gang, whereupon Green handed petitioner a copy of the validation packet, which listed the information relied on to validate petitioner as a member of the BGF. *Id.* at 6-7.

On or about September 20, 2001, plaintiff attended a meeting of the Institutional Classification Committee (ICC). *Id.* at 17; Answer, Ex. D. Plaintiff informed the committee that

8

he had not been afforded a hearing, nor had he been charged with a "serious rule violation." Pet. at 19. The committee gave plaintiff an indeterminate term in the Security Housing Unit (SHU) and referred him for transfer to the SHU at Pelican Bay State Prison. *Id.* at 18. As a result of petitioner's placement in the SHU, his work status was reclassified from A1-A status to D-l status. *Id;* Answer at 12. Because of that change in status, petitioner lost the opportunity to earn 491 days of good-time credit. *Id.*

## II.     Analysis

### A.  Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied

1  clearly established federal law erroneously or incorrectly.  Rather, that application must also be
2  unreasonable." *Id*. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not
3  enough that a federal habeas court, in its independent review of the legal question, is left with a
4  'firm conviction' that the state court was 'erroneous.'")

5        The court looks to the last reasoned state court decision as the basis for the state court
6  judgment.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court reaches a
7  decision on the merits but provides no reasoning to support its conclusion, a federal
8  habeas court independently reviews the record to determine whether habeas corpus relief is
9  available under section 2254(d).  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).  Here, the
10 October 16, 2002 decision of the Lassen County Superior Court denying petitioner's state habeas
11 petition is the last reasoned decision on petitioner's due process and equal protection claims.
12 Therefore, this court must determine whether the Superior Court's decision is contrary to or an
13 unreasonable application of Supreme Court precedent.

      **B.  Applicable Law and Analysis**

          **1.  Due Process**

16       The Due Process Clause of the Fourteenth Amendment protects persons against
17 deprivations of life, liberty or property.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Those
18 who seek to invoke the procedural protections of the Due Process Clause must establish that one
19 of these interests is at stake.  *Id.*  "A liberty interest may arise from the Constitution itself . . . , or
20 it may arise from an expectation or interest created by state laws or policies." *Id*.

21       The Supreme Court has held that "the Constitution does not give rise to a liberty interest
22 in avoiding transfer to more adverse conditions of confinement." *Id.* at 222 (citing *Meachum v.
23 Fano*, 427 U.S. 215, 225 (1976)).  However, the Court also has held that "a liberty interest in
24 avoiding particular conditions of confinement may arise from state policies or regulations,
25 subject to the important limitations set forth in *Sandin v. Conner*, 515 U.S. 472 [ ] (1995)." Id.
26 Such interests generally are limited to "freedom from restraint which. . . imposes atypical and

10

significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

In *Sandin*, the Supreme Court found no liberty interest protecting against a thirty day assignment to segregated confinement because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." *Sandin*, 515 U.S. at 485; *cf. Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (initial confinement in administrative segregation on the basis of little, even unsubstantiated information, does not create objectionable condition).

In *Wilkinson*, the Supreme Court addressed whether Ohio prisoners had a liberty interest protected by the Fourteenth Amendment in not being assigned to the state's "supermax" prison. 545 U.S. at 222-24. The Court found that because the following conditions imposed "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," Ohio prisoners did have such a liberty interest:

> For an inmate placed in OSP, almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. [Cite omitted.] While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context.

*Id.*

Petitioner claims that his right to due process was violated in connection with his placement in the SHU and resultant loss of the right to earn good time credits. Following *Sandin*, a number of Circuit Courts have held that there is no liberty interest, and therefore no due process protection, in the mere opportunity to earn good time credits. *See Abed v. Armstrong*, 209 F.3d 63, 66-67 (2d Cir. 2000) (although inmates have a liberty interest in good

11

1   time credit they have already earned, no such interest has been recognized in the opportunity to
2   earn good time credit where prison officials have discretion to determine whether an inmate or
3   class of inmates is eligible to earn good time credit); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431
4   (7th Cir. 1996) (convicted prisoner with no access to good time credit program because he was
5   incarcerated in county jail had no constitutional interest in the opportunity to earn good time
6   credit); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (applying *Sandin* and holding that the
7   loss of the opportunity to earn gain time is not a constitutionally protected liberty interest).
8   However, the Tenth Circuit has held that a liberty interest is implicated when a disciplinary
9   finding automatically, mandatorily reduces an inmate's credit earning status. *Wilson v. Jones*,
10  430 F.3d 1113, 1121 (10th Cir. 2005), *cert. denied*, 549 U.S. 943 (2006).

11  If petitioner has no liberty interest in the opportunity to earn good-time credits, his due
12  process claim must fail. Even assuming *arguendo* that plaintiff has a liberty interest in not being
13  placed in the SHU for an indeterminate term, this court concludes that he received all the process
14  that was due before being placed and later retained in the SHU.

15  This court rejects petitioner's argument that he was entitled to the procedures outlined in
16  *Wolff v. McDonnell*.[4] The process constitutionally due to an inmate placed in segregation
17  depends on whether the placement is disciplinary or administrative. *Toussaint v. McCarthy*, 801
18  F.2d 1080, 1099 (9th Cir. 1986). In *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003), the U.S.
19  Court of Appeals for the Ninth Circuit determined that California's policy of placing suspected
20  gang members in segregation is an administrative decision, undertaken to preserve order in the
21  prison. When an inmate is placed in segregation for administrative purposes, due process

---

[4] *Wolff* described the procedural protections to which inmates subjected to disciplinary action are entitled. For instance, in the disciplinary context, a prisoner is entitled to advance written notice of the charge against him, a written statement of the evidence relied upon by prison officials and the reasons for any disciplinary action taken, and a hearing at which he may call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. 418 U.S. at 563-69. *See also Hill*, 472 U.S. at 455-56.

12

requires only the following procedures:

> Prison officials must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated. The prison officials must inform the prisoner of the charges against the prisoner or their reasons for considering segregation. Prison officials must allow the prisoner to present his views. . . . [D]ue process [ ] does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation.

*Toussaint*, 801 F.2d at 1100-01 (footnote omitted). In other words, petitioner was entitled to the minimal procedural protections of adequate notice, an opportunity to be heard, and periodic review. *Bruce*, 351 F.3d at 1287. In addition to these minimal protections, there must be "some evidence" supporting the decision to place a prisoner in segregated housing. *Id.* (citing *Hill*, 472 U.S. at 454).

The California Superior Court concluded that there was no violation of California law during the course of petitioner's validation as a prison gang member, and also concluded that the applicable rules and regulations did not violate due process. The Superior Court's construction of its own laws may not be set aside in this federal habeas corpus proceeding. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000); *Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993). There is no federal constitutional requirement that California regulations define or respond to suspected gang participation in any particular manner.

Petitioner's claim that his procedural due process rights were violated when he was validated as a BGF gang member and placed in the SHU lacks merit. He was informed that he had been identified as a gang member and was shown the documentation underlying that identification. At the classification committee meeting held on September 20, 2001, he was an "active participant" and was also allowed to express his opinion that he was not a gang member. The duties of the committee at this hearing were to "consider all available evidence or information relating to the validity of the reasons given for the placement as well as the need to

retain the inmate in administrative segregation. . . . " Cal. Code Regs. tit. 15, § 3338(f). Petitioner has presented nothing suggesting that the ICC members failed to comply with these duties. Moreover, petitioner has received periodic review of the committee's decision. He has therefore received all the process to which he is entitled. *Toussaint*, 801 F.2d at 1100-01.

There was also sufficient evidentiary support for petitioner's assignment to administrative segregation. The "some evidence" standard sets a low bar, consistent with the recognition that assignment of inmates within prisons is "essentially a matter of administrative discretion," subject to "minimal legal limitations." *Bruce*, 351 F.3d at 1287 (citing *Toussaint*, 801 F.2d 1080, with respect to the minimal limitations). A single piece of evidence may be sufficient to meet the "some evidence" requirement, if that evidence has "sufficient indicia of reliability." *Id*. at 1288; *Cato*, 824 F.2d at 705 ("relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board" (citing *Hill*, 472 U.S. at 455-56 (emphases in original)); *Toussaint*, 926 F.2d at 803 (articulating "sufficient indicia of reliability" standard). The material relied upon by Officer Peterson and the ICC to validate petitioner as a gang member, including the materials found in his cell, met this standard.

For all of the foregoing reasons, petitioner has failed to demonstrate that his right to due process was violated when he was identified as a BGF member and housed in the SHU. Accordingly, he is not entitled to relief on his due process claim.

### 2. Equal Protection

In claim 4 of the petition, petitioner alleges in a conclusory manner that his placement in the SHU violated his right to equal protection. Pet. at 17. Respondent did not address petitioner's equal protection claim in the answer. In his supplemental traverse, petitioner argues that his right to equal protection was violated by his placement in the SHU because, unlike petitioner, general population prisoners and prisoners affiliated with other prison gangs are not placed in the SHU and deprived of privileges and time credits unless they have been found guilty

14

of a serious rules violation. Supplemental Traverse at 5-7. In support of this contention, petitioner includes an exhibit which reflects that prison authorities have classified several other groups as "street gangs" or "disruptive groups" for purposes of assessing each prisoner's classification score. *Id.*, Ex. B. In a handwritten notation on this exhibit, petitioner states, "other groups/gangs in gen. pop." *Id.* Petitioner is apparently claiming that other inmates who may be involved in gang activity are allowed to remain in the general prison population, while he was placed in the SHU after he was validated as a member of the BGF. He claims that this situation violates his right to equal protection.

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). *See also McLean v. Crabtree*, 173 F.3d 1176, 1185 (9th Cir. 1999) (holding in a habeas case that proof of discriminatory intent is required to show that state action having a disparate impact violates the Equal Protection Clause); *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318-19 (11th Cir. 2006) (explaining in the context of habeas ruling that "[t]o establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis"). "There must be an allegation of invidiousness or illegitimacy in [a] statutory scheme before a cognizable [equal protection] claim arises." *McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir. 1991). Federal courts employ a strong presumption that governmental classifications do not violate the Equal Protection Clause unless they burden a suspect class or a fundamental interest. *Id.*

Petitioner's equal protection claim lacks merit. The first inquiry for an equal protection claim is which standard of review applies. This, in turn, is determined by whether the petitioner is challenging governmental action that discriminates on the basis of a suspect classification or

15

the exercise of a fundamental right.  If so, a heightened level of scrutiny would apply.  Here, however, petitioner does not challenge class based discrimination predicated on race or any other suspect classification.[5]  Neither does he allege discrimination based on the exercise of a fundamental right.  Rather, he contends that other suspected gang members were treated more favorably than he.  Absent a suspect classification or discrimination based on the exercise of a fundamental right, the relevant standard is a "rational basis" review.  Under that standard the court must determine whether the actions taken by the prison officials are rationally related, i.e. reasonably further, a legitimate governmental interest.  The state clearly has an interest in dealing with the danger of prison gangs to advance the legitimate goal of safety and order in the prison. That interest is not only legitimate, it is compelling.  *See Warsoldier v. Woodford*, 418 F.3d 989, 997 (9th Cir. 2005).  The measures taken here to isolate gang members from the general prison population is a rational means for furthering the legitimate penological goal of reducing the risk of gang violence and therefore satisfies rational basis scrutiny under the Equal Protection Clause.  Nor has petitioner presented evidence showing that distinctions, if any, drawn by prison authorities with regard to various prison gangs or groups lack a rational basis.

More fundamentally, petitioner also fails to establish disparate treatment, let alone a difference in treatment that lacks a legitimate justification.  He alleges that his placement in the SHU after he was validated as a member of BGF violated his right to equal protection because

---

[5] Petitioner does not allege that he is a member of a protected class, and there is no suggestion that his transfer to the SHU was the result of invidious discrimination.  *See*, *e.g.*, *Wolff*, 418 U.S. at 556 (observing that prisoners are protected under the Equal Protection clause against invidious discrimination); *More v. Farrier*, 984 F.2d 269, 272 (8th Cir.1993) (holding that where a case "does not rise to the level of invidious discrimination proscribed by the Equal Protection Clause . . . the federal courts should defer to the judgment of the prison officials."). Finally, "[a]lthough the Equal Protection Clause ensures similarly situated persons are treated alike, it does not ensure absolute equality." *Bruce*, 351 F.3d at 1288. *See also*, *Giba v. Cook*, 232 F. Supp.2d 1171, 1192 (D.Or. 2002) (guard's disciplining of a prisoner did not violate the prisoner's equal protection rights even if the same activity would have been overlooked if done by a different prisoner).  Under the circumstances presented here, petitioner's placement in the SHU did not violate his right to equal protection. *Bruce*, 351 F.3d at 1288 ("because . . . Bruce was afforded the process he was due, the same process all gang affiliates are due, any purported difference in treatment does not rise to the level of an equal protection violation").

16

other prisoners who are gang-affiliated have not been confined in the SHU. But he has failed to demonstrate that these other prisoners are "similarly situated" to him or that similar prisoners were systematically treated better than he was. His allegations to the contrary are conclusory and unsupported. His exhibit does not support any such claim. *See Ashker v. Schwarzenegger*, No. C 05-03286 CW, 2009 WL 801557, at *17 (N.D. Cal. March 29, 2009)[6] (although petitioner alleged that regulations regarding validation as a gang member and placement in the SHU were "enforced arbitrarily because there are many gang members in the general population," the evidence submitted in support of this contention was inadmissible and did not "support his claim that Defendants improperly reviewed him for gang validation").

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied and the Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing

////

////

---

[6] All federal district court rulings and opinions – published or not – may be cited as precedent unless prohibited by local rule. William W. Schwarzer, et al., *California Practice Guide: Federal Civil Procedure Before Trial*, ¶ 1:14.3 (1997) (TGR); *see also Aetna Cas. And Surety Co. v. Kerr-McGee Chemical Corp.* 875 F. 2d 1252, 1255 n. 2 (7th Cir. 1989). The local rules of the Eastern District of California do not prohibit the citation to unpublished district court rulings and opinions.

Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: December 17, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE